IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

COMMODITY FUTURES TRADING
COMMISSION,

             Plaintiff,

          v.

ROTHLIN & WINDSOR CAPITAL
MANAGEMENT, INC., *et al.*

             Defendants.

Civil No. AMD-01-CV 2320
Honorable Andre M. Davis

FILED
ENTERED
RECEIVED

JUN 0 6 2002

CLERK U.S. DISTRICT COURT
AT BALTIMORE
DISTRICT OF MARYLAND
DEPUTY

## CONSENT ORDER OF PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF AGAINST DEFENDANTS ROTHLIN & WINDSOR CAPITAL MANAGEMENT, INC., AND PETER SCOTT

On August 6, 2001, Plaintiff Commodity Futures Trading Commission ("the Commission") filed a complaint against Defendants Peter Scott ("Scott") and Rothlin & Windsor Capital Management ("R&W Capital") (collectively, the "Defendants") seeking injunctive and other equitable relief, as well as the imposition of restitution and civil monetary penalties, for violations of the Commodity Exchange Act, as amended ("Act"), 7. U.S.C. §§ 1 *et seq.* (1994), and the Commission Regulations promulgated thereunder ("Regulations"), 17 C.F.R. §§ 1 *et seq.* (2001). On August 6, 2001, the Court issued an ex parte statutory restraining order that, among other things, froze all assets belonging to or related to the Defendants, and ordered the maintenance of and access to business records.

On August 8, 2001, this Court entered a consent order of preliminary injunction and other equitable relief which, *inter alia,* preliminarily enjoined Defendant's from further violating the Act and Regulations as alleged in the Complaint, froze Defendants' assets, ordered the maintenance of and access to business records, and gave the Commission authority to appoint a Receiver. On November 8, 2001, and again on November 19, 2001, this Court entered orders modifying this preliminary

injunction.

## I.

## CONSENTS AND AGREEMENTS

1.      To effect settlement of the matters alleged in the Complaint in this action without a trial on the merits or any further judicial proceedings, Defendants consent to the entry of this *Consent Order of Permanent Injunction and Other Relief Against Defendants Rothlin & Windsor Capital Management, Inc., and Peter Scott* ("Order ").

2.      Defendants admit that this Court has jurisdiction over them and the subject matter of this action.

3.      Defendants admit that venue properly lies with this Court pursuant to Section 6c of the Act, 7 U.S.C. §13a-1 (1994).

4.      In addition, Defendants waive: (a) all claims which they may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (1994) and 28 U.S.C. § 2412 (1994), as amended by Pub. L. No. 104-121, §§ 231-32, 110 Stat. 862-63, and Part 148 of the Commission's Regulations, 17 C.F.R. §§ 148.1 *et seq.*, to seek costs, fees and other expenses relating to, or arising from, this action; (b) the entry of findings of fact and conclusions of law in this action as provided by Rule 52 of the Federal Rules of Civil Procedure, except as provided below in Section II; (c) any claim of Double Jeopardy based upon the institution of this proceeding or the entry in this proceeding of any order imposing a civil monetary penalty or any other relief; and (d) all rights of appeal from this Order.

5.      By consenting to the entry of this Order, Defendants neither admit nor deny any of the findings made in this order or the allegations contained in the Complaint except as to jurisdiction and venue, which they admit. However, Defendants agree that the allegations of the Complaint and all of the Findings of Fact made by this Court and contained in Part II of this Order

2

shall be taken as true and correct and be given preclusive effect without further proof only for the purpose of any subsequent bankruptcy proceeding filed by, on behalf of, or against Defendants for the purpose of determining whether their restitution obligation and/or other payments ordered herein are excepted from discharge. Defendants also shall provide immediate notice of any bankruptcy filed by, on behalf of, or against them in the manner required by Part V, paragraph 4 of this Order.

6.      Defendants agree that neither they nor any of their agents, servants, employees, contractors or attorneys shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or findings or conclusions in the Order or creating, or tending to create, the impression that the Complaint or this Order is without a factual basis; provided, however, that nothing in this provision shall affect Defendants' (a) testimonial obligations; or (b) right to take legal positions in other proceedings to which the Commission is not a party. Defendants shall take all necessary steps to ensure that all of their agents, servants, employees, contractors and attorneys understand and comply with this agreement.

7.      Defendants agree that they have read this Order and agree to this Order voluntarily and that no promise or threat has been made by the Commission or any member, officer, agent or representative thereof, or by any other person, to induce consent to this Order, other than as set forth specifically herein.

8.      Defendants consent to the continued jurisdiction of this Court in order to implement and carry out the terms of all orders and decrees that may be entered herein, to entertain any suitable application or motion for additional relief within the jurisdiction of this Court, and to assure compliance with the Order.

9.      The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay. The Court therefore

3

directs the entry of findings of fact, conclusions of law and a permanent injunction and ancillary equitable relief pursuant to § 6c of the Act, 7 U.S.C. § 13a-1 (1994), as set forth herein.

## II.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**FINDINGS OF FACT**

1.      From in or about June 1998 until July 2001, the Defendants solicited money from participants and prospective participants (collectively "Pool participants") to invest in the Rothlin and Windsor Future Fund ("the Pool") for the purpose of trading commodity futures contracts and options on commodity futures contracts.

2.      During the course of the Pool's operations, the Defendants misrepresented to Pool participants and prospective Pool participants orally and in writing:

　　　　(i) the trading done by the Pool;

　　　　(ii) the performance record of the Pool;

　　　　(iii) the Pool's value; and

　　　　(iv) the value of the individual Pool participants' shares in the Pool.

3.      The Defendants prepared and provided to Pool participants account statements in which all of the following information concerning the Pool's operation was false:

　　　　(1) the trades made during the month and the profit or loss from each trade;

　　　　(2) total profits or losses on trades closed during the month;

　　　　(3) the management fee to be paid to Scott;

　　　　(4) the Pool's open trade equity, i.e., the value of the open trades of the Pool;

　　　　(5) the Pool's total value;

　　　　(6) the rate of return by the Pool for the month; and

　　　　(7) the value of the Pool participants' share of the Pool as of the end of the month.

4.      All the fraudulent monthly account statements prepared by the Defendants indicated that the Pool had gained value and made a profit for that month when, in fact, the Pool did not gain value or otherwise make a profit for any month.

5.      Defendants obtained additional Pool participants by "word of mouth" in large part based upon the false information contained in the fraudulent account statements provided to current Pool participants.

6.      When contacted by Pool participants, the Defendants orally misrepresented that the false information contained within the fraudulent account statements was true.

7.      Based upon the oral and written misrepresentations made by the Defendants, Pool participants gave them in excess of $7,000,000 to be invested in the Pool.

8.      All investor funds were deposited directly into R&W Capital's bank accounts at either Allfirst Bank or Bank of America.

9.      The Defendants misrepresented orally and in writing to Pool participants that their investments were making substantial rates of return and generating substantial profits.

10.      Of the $7,000,000 given to the Defendants, only approximately $2,000,000 was actually invested in commodity futures and/or commodity options contracts and approximately $1,700,000 of that total was lost trading.

11.      The Defendants returned approximately $2,800,000 in principal and purported profits to Pool participants.

12.      The Defendants misappropriated Pool participants' funds for their personal use totaling approximately $2,000,000, some of which Defendant Scott used for personal expenses (including the purchase of a residence), and other funds were used to pay for business expenses of Defendant R&W Capital.

5

**CONCLUSIONS OF LAW:**

1.      This Court has jurisdiction over the subject matter of this action and all parties

hereto pursuant to Section 6c of the Act which authorizes the Commission to seek injunctive

relief against any person whenever it shall appear that such person has engaged, is engaging or is

about to engage in any act or practice constituting a violation of any provision of the Act or any

rule, regulation or order thereunder.

2.      Venue properly lies with this Court pursuant to Section 6c of the Act.

3.      This Court has personal jurisdiction over the Defendants, each of whom has

acknowledged service of the Complaint and consented to the Court's jurisdiction over each of

them.

4.      The Commission and the Defendants have agreed to this Court's retention of

continuing jurisdiction over each of them for the purpose of enforcing the terms of this Order.

5.      Defendants violated Section 4b(a)(i) and (iii) of the Act, 7 U.S.C. § 6b(a)(i) and (iii)

(1994), in that they cheated, defrauded and willfully deceived or attempted to cheat, defraud or deceive

Pool participants by falsely reporting profitable rates of return from futures trading through fraudulent

account statements and oral misrepresentation when, in fact, substantial losses had been incurred, and

by misappropriating funds invested for futures trading.

6.      Defendants violated Section 4b(a)(ii) of the Act, 7 U.S.C. § 6b(a)(ii)(1994), in that

they willfully made or caused to be made to Pool participants false reports or statements, or willfully

entered or caused to be entered false records, by knowingly delivering to Pool participants trading

account statements which reported false profits.

7.      Defendants violated Section 4c(b) of the Act, as amended, 7 U.S.C. § 6c(b)(1994), and

Regulation 33.10, 17 C.F.R. § 33.10 (2001), in that, by reason of having engaged in the conduct set

forth herein, they have directly or indirectly cheated or defrauded, attempted to cheat or defraud,

deceived, or attempted to deceive, other persons, and have made or caused to be made false reports or statements to other persons, in or in connection with an offer to enter into, the entry into, the confirmation or the execution of, or the maintenance of, commodity option transactions.

8.    R&W Capital, while acting in its capacity as commodity pool operator ("CPO"), violated Section 4o(1)(A) and (B) of the Act, 7 U.S.C. § 6o(1)(A) and (B)(1994), in that it, by reason of having engaged in the conduct described herein, and by use of the mails or other means or instrumentalities of interstate commerce, directly or indirectly, employed a device, scheme, or artifice to defraud clients or pool participants or prospective clients or pool participants, or engaged in transactions, practices or a course of business which operated as a fraud or deceit upon such clients or participants.

9.    Scott, while acting as an associated person ("AP") of a CPO, violated Section 4o(1)(A) and (B) of the Act, in that, he, by reason of having engaged in the conduct described herein, and by use of the mails or other means or instrumentalities of interstate commerce, directly or indirectly, employed a device, scheme, or artifice to defraud clients or pool participants or prospective clients or pool participants, or engaged in transactions, practices or a course of business which operated as a fraud or deceit upon such clients or participants.

10.   Scott, directly or indirectly, controlled R&W Capital and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting R&W Capital's violations of Sections 4o(1)(A) and (B) of the Act and thereby Scott is liable for R&W Capital's violation of Sections 4o(1)(A) and (B) of the Act, pursuant to Section 13(b) of the Act.

11.   R&W Capital violated Section 4m(1) of the Act, 7 U.S.C. § 6m(1)(1994), in that it used the mails or instrumentalities of interstate commerce in or in connection with its business as a CPO while failing to register as a CPO.

12.   Scott, directly or indirectly, controlled R&W Capital and did not act in good faith

7

or knowingly induced, directly or indirectly, the acts constituting R&W Capital's violations of Section 4m(1) of the Act, and thereby Scott is liable for R&W Capital's violation of 4m(1) of the Act, pursuant to Section 13(b) of the Act.

13.    Scott violated Section 4k(2) of the Act, 7 U.S.C. § 6k(2)(1994), in that he was associated with a CPO, R&W Capital, and involved in the solicitation of funds for participation in a commodity pool while failing to register as an AP of a CPO.

14.    R&W Capital violated Section 4k(2) of the Act, in that it permitted Scott to become and remain associated with R&W Capital and knew, or should have known, that Scott was not registered as an AP of R&W Capital.

15.    R&W Capital violated Section 4n(4) of the Act, 7 U.S.C. § 6n(4)(1994), and Regulation 4.22, 17 C.F.R. § 4.22(2001), in that the monthly account statements prepared by R&W Capital and provided to Pool participants failed to provided the required information accurately.    Additionally, R&W Capital did not prepare an annual account statement certified by an independent accountant.

16.    Scott, directly or indirectly, controlled R&W Capital and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting R&W Capital's violations of Section 4n(4) of the Act and Regulation 4.22, and therefore Scott is liable for R&W Capital's violation of Section 4n(4) of the Act and Regulation 4.22, pursuant to Section 13(b) of the Act.

17.    R&W Capital violated Regulation 4.20(a), 17 C.F.R. § 4.20(a)(2001), in that, by failing to open a trading account or a bank account in the name of the Pool, R&W Capital failed to operate the Pool as a separate legal entity.

18.    R&W Capital violated Regulation 4.20(b), in that, while operating as a CPO, it accepted Pool funds in its own name.

19.    Scott, directly or indirectly, controlled R&W Capital and did not act in good faith

or knowingly induced, directly or indirectly, the acts constituting R&W Capital's violations of

Regulations 4.20(a) and (b), and therefore Scott is liable for R&W Capital's violation of

Regulation 4.20(a) and (b), pursuant to Section 13(b) of the Act.

20.    Under the totality of the circumstances, there is a reasonable likelihood of future

violations of the Act and Regulations by the Defendants. Therefore, a permanent injunction should

issue in this action.

21.    Based upon principles of equity, there is good cause for entry of an order directing the

Defendants to make restitution to the Pool in an amount to be determined by the parties and agreed

to in a subsequent consent order or as ordered by the Court, pursuant to hearing or otherwise,

together with prejudgment interest, plus post-judgment interest at the statutory rate, for distribution to

investors in a manner approved by the Court.

22.    There is good cause for entry of an order requiring the Defendants to pay a civil

monetary penalty to be determined by the parties and agreed to in a subsequent consent order or as

otherwise ordered by the court.

## III.

## ORDER FOR PERMANENT INJUNCTION

### NOW THEREFORE, IT IS ORDERED THAT:

1.    The Defendants shall be permanently restrained, enjoined and prohibited from

directly or indirectly:

> a.    in or in connection with any order to make, or the making of, any contract
> of sale of any commodity for future delivery, made, or to be made, for or
> on behalf of any other persons, where such contract for future delivery was
> or could be used for (a) hedging any transaction in interstate commerce in
> such commodity or the products or byproducts thereof, or (b) determining
> the price basis of any transaction in interstate commerce in such
> commodity, or (c) delivering any such commodity sold, shipped, or
> received in interstate commerce for the fulfillment thereof,

9

     i.      cheating or defrauding or attempting to cheat or defraud other persons;

     ii.     willfully making or causing to be made to other persons false reports or statements thereof, or willfully entering or causing to be entered for other persons false records thereof; and

     iii.    willfully deceiving or attempting to deceive other persons;

all in violation of Section 4b(a)(i), (ii) and (iii) of the Act.

b.     in or in connection with an offer to enter into, the entry into, the confirmation of the execution of, or the maintenance of, commodity option transactions,

     i.      cheating or defrauding or attempting to cheat or defraud other persons;

     ii.     making or causing to be made to other persons false reports or statements thereof, or willfully entering or causing to be entered for other persons false records thereof; and

     iii.    deceiving or attempting to deceive other persons;

all in violation of Section 4c(b) of the Act and Regulation 33.10.

c.     while acting as a CPO or an AP of a CPO, employing a device, scheme or artifice to defraud pool participants or prospective pool participants, in violation of Section 4ο(1)(A) of the Act.

d.     while acting as a CPO, engaging in a transaction, practice or course of business which operates as a fraud or deceit upon pool participants or prospective pool participants, in violation of Section 4ο(1)(B) of the Act.

e.     using the mails or instrumentalities of interstate commerce in or in connection with the business of a CPO while failing to register as a CPO, in violation of Section 4m(1) of the Act.

f.     while acting as a CPO, failing to furnish periodic account statements to pool participants, including complete and accurate monthly account statements and an annual certified account statement, in violation of Section 4n(4) of the Act and Section 4.22(a) of the Regulations.

g.     while acting as a CPO, (a) accepting pool funds other than in the name of the pool and (b) failing to treat the pool as a separate entity in violation of

Regulation 4.20(a) and (b).

2.      Defendant Peter Scott is permanently restrained, enjoined and prohibited from directly or indirectly acting as an AP of a CPO involved in the solicitation of funds for participation in a commodity pool while failing to register as an AP of a CPO, in violation of Section 4k(2) of the Act.

3.      Defendant R&W Capital, while acting as a CPO, is permanently restrained, enjoined and prohibited from permitting any person from being associated with R&W Capital without being registered as an AP of the CPO in violation of Section 4k(2) of the Act.

4.      Defendants are further permanently restrained, enjoined and prohibited from: applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R.§ 4.14(a)(9) (2001), or acting as a principal, agent, officer or employee of any person registered, required to be registered, or exempted from registration, except as provided for in Regulation 4.14(a)(9).

5.      Defendants are further enjoined from trading on or subject to any registered entity and engaging in, controlling or directing the trading of any futures or options accounts for or on behalf of any other person or entity, whether by power of attorney or otherwise.

6.      The injunctive provisions of this Consent Order shall be binding upon the Defendants, upon any person insofar as he or she is acting in the capacity of officer, agent, servant, employee or attorney of any of the Defendants and upon any person who receives actual notice of this Consent Order, by personal service or otherwise, insofar as he or she is acting in active concert or participation with any Defendant.

11

## IV.

## OTHER EQUITABLE RELIEF

**IT IS FURTHER ORDERED THAT:**

1.      Defendants shall pay restitution in an amount to be determined at a later date.  If the parties do not reach an agreement as to the amount of restitution within sixty days of the entering of this order, subject to extension on motion, then the Court will schedule a hearing to determine the appropriate amount of restitution.

2.      Defendants shall pay a civil monetary penalty in an amount to be determined at a later date.  If the parties do not reach an agreement as to the amount of civil monetary penalty within sixty days of the entering of this order, subject to extension on motion, then the Court will schedule a hearing to determine the appropriate amount of civil monetary penalty.

3.      The Commission shall have the authority and discretion to appoint a Receiver, whose powers include, but are not limited to, the ability to sell any real property owned by Defendants or property purchased by the Defendants with misappropriated funds.

## V.

## MISCELLANEOUS PROVISIONS

1.      If any provision of this Order or the application of any provision or circumstance is held invalid, the remainder of this Order, and the application of the provision to any other person or circumstance, shall not be affected by the holding.

2.      Upon being served with copies of this Consent Order after entry by the Court, the Defendants shall sign an acknowledgment of such service and serve such acknowledgment on the Commission within seven (7) calendar days.

3.      This Court shall retain jurisdiction of this action in order to implement and carry

out the terms of all orders and decrees, including orders setting the appropriate amounts of

restitution and civil monetary penalty, that may be entered herein, to entertain any suitable

application or motion for additional relief within the jurisdiction of this Court, and to assure

compliance with this Order.

4.    The Statutory Restraining Order previously ordered by the Court shall remain in

full force and effect until further order of this Court.

5.    All notice required to be given by any provision in this Order shall be sent

by certified mail, return receipt requested, as follows:

Notice to the Commission:

Leanna Saler, Esq.
Jason Gizzarelli, Esq.
Division of Enforcement
Three Lafayette Centre
1155 21st St. N.W.
Washington, D.C. 20581

Notice to the Defendants:

Andrew White, Esq.
201 N. Charles St.
Suite 2600
Baltimore, MD 21201

6.    In the event that any of the Defendants change their residential or business

telephone number(s) and/or address(es) at any time, they shall provide written notice of the new

number(s) and/or address(es) to the Monitor and to the Commission within ten calendar days

thereof.

13

SO ORDERED, this _6th_ day of June, 2002, at Baltimore, Maryland.

_Andre M. Davis_
ANDRE M. DAVIS
UNITED STATES DISTRICT JUDGE

Consented to and
approved for entry by:

Counsel for the Defendant:                    Defendants:

_Andrew White_                                _Peter Scott_
Andrew White, Esq.                            Peter Scott
Steven Silverman, Esq.
201 N. Charles St.                            _Peter Scott_
Baltimore, MD 21201                           Rothlin & Windsor Capital
(410)576-2200                                 Management, Inc.


Counsel for the Plaintiff:

_Leanna Saler_
Leanna Saler, Esq.
Bar No. 26605
Jason Gizzarelli, Esq.
Commodity Futures
Trading Commission
Three Lafayette Centre
1155 21st Street
Washington, D.C. 20581
(202) 418-5466

14