IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND



COMMODITY FUTURES TRADING
COMMISSION,

    Plaintiff,

v.

ROTHLIN & WINDSOR CAPITAL
MANAGEMENT, INC., *et al.*

    Defendants.

Civil No. AMD-01-CV 2320
Honorable Andre M. Davis

## SUPPLEMENTAL CONSENT ORDER CONCERNING RESTITUTION AND CIVIL MONETARY PENALTY AGAINST DEFENDANTS ROTHLIN & WINDSOR CAPITAL MANAGEMENT, INC., AND PETER SCOTT

On August 6, 2001, Plaintiff Commodity Futures Trading Commission ("the Commission") filed a complaint against Defendants Peter Scott ("Scott") and Rothlin & Windsor Capital Management ("R&W Capital") (collectively, the "Defendants") seeking injunctive and other equitable relief, as well as the imposition of restitution and civil monetary penalties, for violations of the Commodity Exchange Act, as amended ("Act"), 7. U.S.C. §§ 1 *et seq.* (1994), and the Commission Regulations promulgated thereunder ("Regulations"), 17 C.F.R. §§ 1 *et seq.* (2001). On August 6, 2001, the Court issued an ex parte statutory restraining order that, among other things, froze all assets belonging to or related to the Defendants, and ordered the maintenance of and access to business records.

On August 8, 2001, this Court entered a consent order of preliminary injunction and other equitable relief which, *inter alia,* preliminarily enjoined Defendants from further violating the Act and Regulations as alleged in the Complaint, froze Defendants' assets, ordered the maintenance of and access to business records, and gave the Commission authority to appoint a Receiver. On November 8, 2001, and again on November 19, 2001, this Court entered orders modifying this

preliminary injunction.

On June 6, 2002, this Court entered the *Consent Order of Permanent Injunction and Other Equitable Relief Against Defendants Rothlin & Windsor Capital Management, Inc., and Peter Scott* ("Consent Order") that enjoins Defendants from further violations of the Act and Regulations, as alleged in the complaint, and permanently prohibits them from, among other things, trading commodity futures contracts or options on commodity futures contracts and from seeking registration with the Commission or acting in any capacity requiring Commission registration. In addition, the order required Defendants to pay restitution and a civil monetary penalty in an amount to be determined either by settlement, which must be reached within 60 days of the entry of the consent order, or by a court hearing to be scheduled upon the expiration of the 60 days. This Supplemental *Consent Order Concerning Restitution and Civil Monetary Penalty Against Defendants Rothlin & Windsor Capital Management, Inc., and Peter Scott* ("Supplemental Order"), sets out the appropriate amount of restitution and civil monetary penalty to be paid by Defendants as determined by the parties.

## I.

## CONSENTS AND AGREEMENTS

1. To effect settlement of the matters alleged in the Complaint in this action without a trial on the merits or any further judicial proceedings, Defendants consent to the entry of this Supplemental Order.

2. Defendants admit that this Court has jurisdiction over them and the subject matter of this action.

3. Defendants admit that venue properly lies with this Court pursuant to Section 6c of the Act, 7 U.S.C. §13a-1 (1994).

4. In addition, Defendants waive: (a) all claims which they may possess under the

Equal Access to Justice Act, 5 U.S.C. § 504 (1994) and 28 U.S.C. § 2412 (1994), as amended by Pub. L. No. 104-121, §§ 231-32, 110 Stat. 862-63, and Part 148 of the Commission's Regulations, 17 C.F.R. §§ 148.1 *et seq.*, to seek costs, fees and other expenses relating to, or arising from, this action; (b) the entry of findings of fact and conclusions of law in this action as provided by Rule 52 of the Federal Rules of Civil Procedure, except as provided below in Section II; (c) any claim of Double Jeopardy based upon the institution of this proceeding or the entry in this proceeding of any order imposing a civil monetary penalty or any other relief; and (d) all rights of appeal from this Order.

5. By consenting to the entry of this Supplemental Order, Defendants neither admit nor deny any of the findings made in the Consent Order or the allegations contained in the Complaint except as to jurisdiction and venue, which they admit. However, Defendants agree that the allegations of the Complaint and all of the findings of fact made by this Court in the Consent Order are taken as true and correct and shall be given preclusive effect without further proof only for the purpose of any subsequent bankruptcy proceeding filed by, on behalf of, or against Defendants for the purpose of determining whether their restitution obligation, civil monetary penalty and/or other payments ordered herein are excepted from discharge. Defendants also shall provide immediate notice of any bankruptcy filed by, on behalf of, or against them in the manner required by Part V, paragraph 1 of the Consent Order.

6. Defendants agree to relinquish any right, title, interest or privilege they may possess in any of the assets frozen by this Court, including funds in trading and banking accounts. In addition, Defendants agree to relinquish any right, title, interest or privilege they may possess in the residence located in Forest Hill, Maryland that Defendant Scott purchased with misappropriated funds.

7. Defendants agree that neither they nor any of their agents, servants, employees,

contractors or attorneys shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or findings or conclusions in the Consent Order or this Supplemental Order or creating, or tending to create, the impression that the Complaint, the Consent Order or this Supplemental Order is without a factual basis; provided, however, that nothing in this provision shall affect Defendants' (a) testimonial obligations; or (b) right to take legal positions in other proceedings to which the Commission is not a party. Defendants shall take all necessary steps to ensure that all of their agents, servants, employees, contractors and attorneys understand and comply with this agreement.

8. Defendants agree that they have read this Supplemental Order and agree to this Supplemental Order voluntarily and that no promise or threat has been made by the Commission or any member, officer, agent or representative thereof, or by any other person, to induce consent to this Supplemental Order, other than as set forth specifically herein.

9. Defendants consent to the continued jurisdiction of this Court in order to implement and carry out the terms of all orders and decrees that may be entered herein, to entertain any suitable application or motion for additional relief within the jurisdiction of this Court, and to assure compliance with the Consent Order and this Supplemental Order.

10. The Court, being fully advised in the premises, finds that there is good cause for the entry of this Supplemental Order and that there is no just reason for delay. The Court therefore directs the entry of equitable relief, pursuant to § 6c of the Act, 7 U.S.C. § 13a-1 (1994), as set forth herein.

## II.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the subject matter of this action and all parties hereto pursuant to Section 6c of the Act, as amended, 7 U.S.C. § 13a-1 (1994), which authorizes

the Commission to seek injunctive relief against any person whenever it shall appear that such person has engaged, is engaging or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation or order thereunder.

2. Venue properly lies with this Court pursuant to Section 6c of the Act, as amended, 7 U.S.C. § 13a-1 (1994).

3. This Court has personal jurisdiction over the Defendants, each of whom has acknowledged service of the Complaint and consented to the Court's jurisdiction over each of them.

4. The Commission and the Defendants have agreed to this Court's retention of continuing jurisdiction over each of them for the purpose of enforcing the terms of the consent order of permanent injunction and this Supplemental Order.

5. Defendants shall not retain any right, title, interest or privilege in any of the assets frozen by this Court, including funds in trading and bank accounts. In addition, Defendants shall not retain any right, title, interest or privilege in the residence located in Forest Hill, Maryland that Defendant Scott purchased with misappropriated funds.

6. Based upon principles of equity, there is good cause for entry of an order directing Defendants to make restitution to the investors of Rothlin and Windsor Future Fund ("the Pool") in the amount of $5,276,862.57, together with prejudgment interest in the amount of $1,515,325.86, plus post-judgment interest at the statutory rate, for distribution to investors in a manner approved by the Court.

7. There is good cause for entry of an order requiring Defendants to pay a contingent civil monetary penalty in an amount of up to $7,131,864.51, which represents the total sum of money collected for the Pool.

III.

## ORDER FOR EQUITABLE RELIEF

**IT IS FURTHER ORDERED THAT:**

A.  **DEFENDANTS TO PAY RESTITUTION TO POOL PARTICIPANTS**

1. Defendants are ordered to pay restitution of customer funds in the amount of $5,276,862.57 ("Restitution Obligation"), plus prejudgment interest in the amount of $1,515,325.86. Post-judgment interest shall accrue on the Restitution Obligation at the rate provided for by 28 U.S.C. § 1961, assessed pursuant to Part III, Section A, Paragraph 5e below of the payment plan.

2. The persons to whom restitution shall be made ("Pool participants") are identified in the attached Exhibit A.

3. The National Futures Association shall be designated as Monitor ("Monitor") for the period beginning with the date of entry of this Supplemental Order and continuing until distribution of the last payment called for by this Supplemental Order.

4. Upon the entry of this Supplemental Order, the provisions of the Court's June 6, 2002 Consent Order entered against the Defendants continuing a freeze on their assets shall no longer be in effect. Upon being served with copies of this Supplemental Order after entry by the Court, financial institutions and other entities holding frozen funds or other property previously controlled by Defendants shall tender same to the Monitor. Such funds shall be distributed to the Pool participants in accordance with the restitution plan outlined in Exhibit A.

5. Defendants shall pay the Restitution Obligation as follows:

   a. Within five days of the date of this Supplemental Order, all financial institutions and other entities holding frozen funds or other property previously controlled by the Defendants shall relinquish possession of those

funds to the Monitor. The Monitor shall distribute these funds as restitution payments to the Pool participants listed in Exhibit A. The Monitor will make such payments on a pro rata basis. In the event that the Monitor is not able to effect any payment to any Pool participant within 180 days of the date of this Supplemental Order, the Monitor shall, within ten days thereafter, distribute that remaining amount to the remaining Pool participants listed on Exhibit A on a pro rata basis. In addition, within five days of this Supplemental Order, Defendants will inform the Monitor whether they have commenced or are planning to commence any claim with the Internal Revenue Service or any state tax or revenue authority to recover taxes based on the false profits and/or losses they reported on income tax returns. Defendants will inform the Monitor at the semi-annual times at which they provide financial information as to the status of any claim with the Internal Revenue Service or any state tax or revenue authority. If the Defendants are able to obtain any funds from the Internal Revenue Service or any state tax or revenue authority based on a claim as described above, they shall relinquish these funds to the Monitor for distribution to the Pool participants.

b. Defendants shall pay the remaining restitution amount, as follows:

    i. Defendants shall make an annual payment to an account designated by the Monitor on or before July 31 of each calendar year (the "Annual Restitution Payment"), beginning in calendar year 2003 and continuing for ten years[1] (or until full restitution is made or otherwise discharged, whichever occurs first). At the end of the ten-year payment period, the Defendants' only remaining restitution obligation shall be pursuant to Part III, Section A, Paragraph 1 and Part III, Section B, Paragraph 5. The amount of the Defendants' Annual Restitution Payment shall consist of a portion of: (1) their adjusted gross income (as defined by the Internal Revenue Code) earned or received by the Defendants during the preceding calendar year, plus (2) all other net cash receipts, net cash entitlements or net proceeds of non-cash assets received by the Defendants during the preceding calendar year. The Annual Restitution Payment will be determined as follows:

---

[1] The Defendants' ten-year restitution period shall run from January 1, 2002 through December 31, 2011. Restitution payments for a calendar year shall take place by July 31 of the following year. Therefore, the final restitution payment for the year 2011 will occur on or before July 31, 2012.

| Total Adjusted Gross Income plus Net Cash Receipts: | Percent of Total to be Paid by the Defendants: |
|---|---|
| $0 -- $25,000 | 0% |
| $25,000--$50,000 | 20% of the amount above $25,000 |
| $50,000 -- $100,000 | 20% of the amount between $25,000 and $50,000 plus 30% of the amount between $50,000 and 100,000 |
| $100,000 and up | 20% of the amount between $25,000 and $50,000 plus 30% of the amount between $50,000 and $100,000 plus 40% of the amount above $100,000 |

    c.    Such funds shall be distributed as restitution payments to the Pool participants in the amounts calculated by the Monitor unless, at its sole discretion, based upon the amount of funds available for distribution, the Monitor decides to defer distribution. If, at the end of the ten-year period, any part of the Annual Restitution Payments has not been distributed, the Monitor at its sole discretion shall either distribute the funds in the account as restitution or apply the funds as payment to the civil monetary penalty obligation, as provided in Part III, Section B, paragraphs 1-2, below.

    d.    The Defendants shall provide to the Monitor complete copies of their signed income tax returns filed with the Internal Revenue Service ("IRS"), all IRS 1099 forms, and all other schedules and attachments (e.g., IRS Form W-2), as well as any filings they are required to submit to any state tax or revenue authority, on or before June 30 of each calendar year, ending on June 30, 2012. If, during the same time period, Defendant Scott elects to file a joint tax return, he shall provide all documents called for by this Part III, Paragraphs 5d(i)-(iii), including the signed and filed joint tax return, plus a draft individual tax return prepared on IRS Form 1040 containing a certification by a licensed certified public accountant that the "Income" section (currently lines 7-22 of Form 1040) truly, accurately and completely reflects all of his income, that the "Adjusted Gross Income" section (currently lines 23-33 of Form 1040) truly, accurately and completely identifies all deductions that Defendant Scott has a right to claim, and that the deductions contained in the "Adjusted Gross Income" section are equal to or less than 50% of the deductions that he is entitled to claim on the joint tax return; provided, however, that he may claim 100%

8

of the deductions contained in the "Adjusted Gross Income" section that are solely his. Such individual tax return shall include all schedules and attachments thereto (e.g., IRS Forms W-2) and Forms 1099, as well as any filings required to be submitted to any state tax or revenue authority. Defendants shall also provide their sworn financial statements on December 31 of each calendar year, starting on December 31, 2002, and continuing through and including December 31, 2011. The financial statements shall provide:

    i.    A true and complete itemization of all of the Defendants' rights, title and interest (or claimed in) any asset, wherever, however and by whomever held;

    ii.    An itemization, description and explanation of all transfers of assets with a value of $1,000 or more made by or on behalf of the Defendants over the preceding six-month interval; and

    iii.    A detailed description of the source and amount of all of the Defendants' income or earnings, however generated.

e.    Based on the information contained in the Defendants' tax returns (and, to the extent they are provided, their sworn financial statements), the Monitor shall calculate the Annual Restitution Payment to be paid by the Defendants for that year and the specific amounts payable to each of the Pool participants. If the Monitor determines that an Annual Restitution Payment is due, then the Monitor will increase the amount of the remaining restitution payments by post-judgment interest calculated to the date of payment based on the total remaining obligation pursuant to 28 U.S.C. § 1961. On or before July 31 of each year, the Monitor shall send written notice to the Defendants with instructions to immediately pay the Annual Restitution Payment to the Monitor.

f.    Exhibit A, attached hereto, includes the names and last known addresses of the Pool participants to whom restitution shall be made pursuant to this Part III, Section A, Paragraphs 1-5, together with the amount of restitution payable by the Defendants to each of them (not including required interest) and the pro-rata distribution percentage to which each pool participant is entitled.

## B. DEFENDANTS TO PAY A CIVIL MONETARY PENALTY

1. The Defendants shall pay a contingent civil monetary penalty in an amount up to $7,131,864.51, commencing upon their fulfillment or discharge of their Restitution Obligation as set forth in Part III, Section A, Paragraphs 1-5 above.

2. The Defendants shall pay the contingent civil monetary penalty in annual

installment payments ("Annual CMP Payment") following their satisfaction or other discharge of their Restitution Obligation, and continuing until July 31, 2013 (or until the full civil monetary penalty is paid in full, if that happens first). Should the amount due under the payment plan for any Annual Restitution Payment be greater than the balance due on the Defendants' restitution obligation, that amount shall constitute the Defendants' first annual CMP payment and be paid in accordance with the payment schedule set forth in Part III, Section A, Paragraph 5 above. The Annual CMP Payment shall be calculated by the Monitor in accordance with the payment schedule set forth in Part IV, Section A, Paragraph 5 above. After satisfaction of the Restitution Obligation, should funds remain that same year pursuant to the restitution payment schedule, such funds shall immediately be paid as part of the civil monetary penalty payment. Defendants shall make each such Annual CMP Payment by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check, or bank money order, made payable to the Commodity Futures Trading Commission, and sent to Dennese Posey, or her successor, Division of Enforcement, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581, under cover of a letter that identifies the Defendants and the name and docket number of the proceeding; the Defendants shall simultaneously transmit a copy of the cover letter and the form of payment to the Monitor, and to Gregory Mocek, Director, Division of Enforcement, Commodity Futures Trading Commission, at the following address: 1155 21st Street, NW, Washington, D.C. 20581. The Defendants' contingent civil monetary penalty obligation will terminate at the end of the ten-year payment period.

    3.    The Defendants shall cooperate fully with the Monitor and the Commission in explaining their financial income and earnings, status of assets, financial statements, asset transfers and tax returns, and shall provide such additional information and documents with respect thereto as may be requested by the Monitor or the Commission. The Defendants shall also cooperate fully

expiration of any statute of limitations, waiver, estoppel or laches, where such defense is based on the alleged failure of the Commission to pursue such claims or causes of action during the pendency of this civil action, during the negotiation of the Defendants' consent to this Supplemental Order or while this Supplemental Order remains in effect. The only issue that the Defendants may raise in defense is whether they have made the Annual Restitution Payments and/or Annual CMP Payments as directed by the Monitor. Any motion by the Commission for entry of an order pursuant to this paragraph requiring payment of less than the full amount of the restitution and/or civil monetary penalty, set forth in Part III, Section A, Paragraph 1 and Part III, Section B, Paragraph 1 above, or any acceptance by the Commission of partial payment of the Annual Restitution Payments and/or Annual CMP Payments made by the Defendants, shall not be deemed a waiver of the Commission's right to require the Defendants to make further payments pursuant to the payment plans set forth above, or, in the event of a further Event of Default, a waiver of the Commission's right to require immediate payment of the entire remaining balance, or any unpaid portion, of the restitution amount and/or civil monetary penalty set forth in Part IV, Section A, Paragraph 1 and Part III, Section B, Paragraph 1 above.

8.  Based upon their sworn representations in their Financial Disclosure Statements and other evidence provided by the Defendants to the Commission regarding their financial condition, the Commission has agreed that this Supplemental Order would not require their immediate payment of the entire Restitution Obligation and civil monetary penalty. The Commission's determination not to require immediate payment of the entire Restitution Obligation and civil monetary penalty is contingent upon the accuracy and completeness of the Defendants' Financial Disclosure Statements and other evidence provided by the Defendants regarding their financial condition. If at any time following the entry of this Supplemental Order, the Commission obtains

information indicating that their representations to the Commission concerning their financial condition were fraudulent, misleading, inaccurate or incomplete in any material respect as of the time such representations were made, the Commission may move this Court for an order requiring the Defendants to make immediate payment of their entire restitution obligation and/or civil monetary penalty, or of any portion thereof, the amount of which shall be determined by the Commission. In connection with any such motion, the only issues shall be whether the financial information provided by the Defendants was fraudulent, misleading, inaccurate or incomplete in any material respect as of the time such representations were made. In its motion, the Commission may move this Court to consider all available remedies, including, but not limited to, ordering the Defendants to pay funds or transfer assets or directing the forfeiture of any assets, and the Commission may also request additional discovery. The Defendants may not, by way of defense to such motion, challenge the validity of his consent or this Supplemental Order, or contest any of the findings of fact or conclusions of law set forth in the consent order of permanent injunction or this Supplemental Order, assert that payment of restitution and/or a civil monetary penalty should not be ordered, or contest the amount of the restitution or civil monetary penalty to be paid. If in such motion, the Commission moves for, and the Court orders, payment of less than the full amount of the restitution obligation or the full amount of civil monetary penalty, such motion will not be deemed a waiver of the Commission's right to require Defendants to make further payment pursuant to the payment plans set forth above.

9. If any provision of this Supplemental Order or the application of any provision or circumstance is held invalid, the remainder of this Supplemental Order, and the application of the provision to any other person or circumstance, shall not be affected by the holding.

10. Upon being served with copies of this Supplemental Order after entry by the

Court, the Defendants shall sign an acknowledgment of such service and serve such acknowledgment on the Commission within seven (7) calendar days.

11. This Court shall retain jurisdiction of this action in order to implement and carry out the terms of all orders and decrees that may be entered herein, to entertain any suitable application or motion for additional relief within the jurisdiction of this Court, and to assure compliance with this Supplemental Order.

### IV.

### MISCELLANEOUS PROVISIONS

1. All notice required to be given by any provision in this Order shall be sent by certified mail, return receipt requested, as follows:

Notice to the Commission:

Jason Gizzarelli, Esq.
Division of Enforcement
Three Lafayette Centre
1155 21st St. N.W.
Washington, D.C. 20581

Notice to the Monitor:

Dan Driscoll
National Futures Association
200 West Madison Street
Chicago, IL 60606

Notice to the Defendants:

Andrew White, Esq.
201 N. Charles St.
Suite 2600
Baltimore, MD 21201

2. In the event that any of the defendants change their residential or business

telephone number(s) and/or address(es) at any time, they shall provide written notice of the new number(s) and/or address(es) to the Monitor and to the Commission within ten calendar days thereof.

SO ORDERED, this 17 day of Dec., 2002, at Baltimore, Maryland.

_____
ANDRE M. DAVIS
UNITED STATES DISTRICT JUDGE

Consented to and
approved for entry by:

Counsel for the Defendant:                    Defendants:

_____                    _____
Andrew White, Esq.                            Peter Scott
Steven Silverman, Esq.
201 N. Charles St.                            _____
Baltimore, MD 21201                           Rothlin & Windsor Capital
(410) 576-2200                                Management, Inc.

Counsel for the Plaintiff:

_____
Jason Gizzarelli, Esq.
Steven Humenik, Esq.
Commodity Futures
Trading Commission
Three Lafayette Centre
1155 21st Street
Washington, D.C. 20581
(202) 418-5466

15